UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN SAM,

       Plaintiff,

v.

       Case No. 2:10-CV-10332
       Hon. Gerald E. Rosen
       Mag. Michael Hluchaniuk

COUNTY OF WAYNE, KIM
WORTHY, LISA RAYMOND, and
RAIGHEN WOODS,

       Defendants.
_____/

**OPINION AND ORDER REGARDING DEFENDANTS'
CORRECTED MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    April 29, 2010

PRESENT: Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Martin Sam brought this § 1983 action on January 25, 2010 against Defendants Wayne County, Wayne County Prosecutor Kym Worthy, and Assistant Prosecutors Lisa Raymond and Raeighen Woods, alleging violations of his Fourth and Fourteenth Amendment rights. Specifically, he alleges that he was offered a plea deal under a statute that had not yet been made law when he committed the underlying offense. He accepted the deal and was incarcerated for one year before the mistake was

acknowledged. In lieu of filing answers to Plaintiff's Complaint, Defendants have filed a motion to dismiss, primarily on absolute prosecutorial immunity grounds. Plaintiff has not filed a timely response.

Having reviewed the Complaint, Defendant's written submissions in support of this motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendants' motion "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTS

On September 21, 2006, Plaintiff Martin Sam was involved in a roll-over accident while driving his vehicle on northbound I-75, near I-94 in the City of Detroit. His blood alcohol level was 0.13, well above the legal limit. Plaintiff and his wife, Jennie Sam, were injured in the accident. They were both hospitalized. The Wayne County Prosecutor's Office initially charged Plaintiff with operating under the influence of intoxicating liquor (OUIL) causing serious injury. Mich. Comp. Laws § 257.625(5). In addition to this charge, Plaintiff was notified of the prosecution's intent to seek Habitual Offender Fourth Offense enhancement, which would elevate his sentence to life in prison

2

based on five prior felony convictions. Plaintiff also had two prior convictions for driving while impaired.[1]

On November 7, 2007, the date set for Plaintiff's trial to begin, Defendant Lisa Raymond, an assistant prosecutor for the Wayne County Prosecutor's Office, offered Plaintiff a plea agreement, which called for Plaintiff to plead guilty to OUIL, Third Offense, Mich. Comp. Laws § 257.625(1), and Habitual Offender Fourth Offense, in exchange for dropping the OUIL causing serious injury charge. Raymond stated on the record that she was offering the plea deal in part because Plaintiff's wife, the victim in the car accident, refused to testify against her husband or cooperate with the prosecution. (Compl. Ex. A. at 3-4.) Plaintiff, represented by counsel, accepted the plea deal and acknowledged his five prior felony convictions.

At the sentencing hearing on November 29, 2007, Plaintiff testified on his own behalf and acknowledged that his wife had refused to cooperate with the prosecution. His wife, his AA sponsor, and his family court attorney served as character witnesses. Defendant Raeighen Woods, an assistant prosecutor for the Wayne County Prosecutor's Office, spoke on behalf of Wayne County: "Mr. Sam obviously doesn't want to take responsibility for his actions." (Compl. Ex. C at 14.) She then went on to enumerate Plaintiff's prior convictions, from 1987 through 2004. Wayne County Circuit Court Judge Michael J. Callahan heard the testimony, as well as arguments from the attorneys.

---

[1] Plaintiff was convicted of driving while impaired on March 13, 1990, in Harper Woods, and of driving under the influence of liquor on January 30, 1991, in St. Clair Shores.

He ultimately committed Plaintiff to the custody of the Michigan Department of Corrections for a minimum of 30 months to a maximum of 60 months. (Compl. Ex. C at 17-18.)

Subsequently, Plaintiff appealed his plea-based conviction. He argued that his conviction for OUIL, Third Offense, was illegal because his prior drunk driving offenses fell outside the ten-year period of time permitted by the statute. Mich. Comp. Laws § 257.625. Although drunk driving laws were amended on January 3, 2007 to permit prosecutors to consider *any* drinking convictions within the offender's lifetime, this amendment did not take effect until three months after Plaintiff's drunk driving offense.[2]

The Michigan Supreme Court overturned Plaintiff's conviction on November 26, 2008, in light of the prosecution's admission that it could not have prosecuted the defendant for OUIL, Third Offense, under the terms of the statute at the time of Defendant's offense. (Compl. Ex. B, Ord. of Mich. S. Ct.) The case was remanded for further proceedings to Wayne County Circuit Court. Plaintiff was ultimately released

---

[2] Prior to January 3, 2007, Mich. Comp. Laws § 257.625(9)(c) provided that a person who committed a drunk driving related offense was guilty of felony drunk driving if he had been convicted of two or more drunk driving related offenses *within the previous ten years*. 2006 Mich. Pub. Acts 564, also known as "Heidi's Law," took effect January 3, 2007. It amended Mich. Comp. Laws § 257.625(9)(c) to remove the ten-year time frame. Under the old statute, a OUIL offense for someone who had not committed a drunk driving offense in the preceding ten-year period was treated as a misdemeanor, punishable by imprisonment for up to 93 days. The statute now provides that a person who has been convicted of two or more drunk driving related offenses may be convicted of a felony upon committing a third offense, regardless of when the previous convictions occurred. The amended statute treats the third offense as a felony, punishable by imprisonment under the jurisdiction of the department of corrections for not less than 1 year or more than 5 years.

from jail and, on February 17, 2009, Judge Callahan entered an order of dismissal of the case, without indicating whether the dismissal was granted with or without prejudice. (Compl. Ex. D, Ord. of Dismissal.) There is nothing in the record to indicate whether Wayne County intends to re-prosecute Plaintiff.

Plaintiff claims that as a result of the erroneous plea offer of OUIL, Third Offense, Habitual Offender, Fourth Offense, he was harshly sentenced and spent one year in jail until the Supreme Court overturned his conviction. Specifically, in Count I of his Complaint, he alleges that:

> Pursuant to . . . Section 1983, as well as the 4th and 14th Amendments of the United States Constitution, the Defendants owed Plaintiff a duty to act prudently, and to otherwise avoid gross negligence and/or deliberate indifference in their prosecution of him, when they knew or should have known that the charge for which he was sentenced was not legally justified.

(Compl. ¶ 21.) He further alleges that as a direct and proximate result of their failure to fulfill this duty, he spent one year in jail in violation of his Fourth and Fourteenth Amendment rights. In Count II of his Complaint, Plaintiff alleges that:

> The County of Wayne through its Office of the Prosecuting Attorney, Law Department, and other policymakers, including Wayne County Prosecutor, Defendant Kim [sic] Worthy, the elected Prosecutor, who was supervisor of the other Defendants, pursued policies, practices and customs that were a direct and proximate cause of the aforementioned violations of constitutional rights alleged herein.

(Compl. ¶ 24.) These alleged policies included failing to properly supervise the assistant prosecuting attorneys and failing to properly review the cases that the Prosecutor's Office decided to pursue to make certain that statutorily impermissible charges would not be

lodged against Plaintiff in violation of his constitutional rights. (Compl. ¶ 25.) Plaintiff seeks economic and non-economic damages in excess of $75,000.

### III. ANALYSIS

**A.      Standard Governing Defendants' Motion**

Through the present motion, Defendants seek the dismissal of each of the claims in Plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." When considering a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to

6

relief that is plausible on its face." Twombly, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

**B.      Absolute Prosecutorial Immunity Shields Defendants Raymond, Woods, and Worthy From Suit Based Upon the Plea Agreement Under the Amended Statute.**

As prosecutors, Defendants Raymond, Woods, and Worthy, are entitled to absolute immunity from § 1983 liability. Imbler v. Pachtman, 424 U.S. 409, 420, 96 S. Ct. 984 (1976). This immunity, derived from common law principles, is animated by a "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Id. at 423. Although absolute prosecutorial immunity may "leave[] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," the Supreme Court has held that "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." Id. at 427. Moreover, absolute immunity does not place prosecutors beyond the reach of criminal law and professional sanctions, both of which may be used to deter willful misconduct. Id. at 429.

7

Courts have adopted a "functional" approach for determining whether an official is entitled to absolute prosecutorial immunity. Forrester v. White, 484 U.S. 219, 229, 108 S. Ct. 538 (1988) (explaining that courts should look to "the nature of the function performed, not the identity of the actor who performed it"); Spurlock v. Thompson, 330 F.3d 791, 797 (6th Cir. 2003). Courts look to whether the prosecutor's activities are "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430. Acts that occur in the course of the prosecutor's role as an advocate for the state are covered by the immunity. Cooper v. Parrish, 203 F.3d 937, 947 (6th Cir. 2000) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Moreover, absolute prosecutorial immunity is not strictly limited to "the act of initiation itself and to conduct occurring in the courtroom," but encompasses any activities "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial," including "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial." Buckley v. Fitzsimmons, 509 U.S. 259, 272-73, 113 S. Ct. 2606, 2615 (1993). In Imbler, the Supreme Court found that even a prosecutor's knowing use of false testimony and the suppression of material evidence at the defendant's criminal trial were "intimately associated" with the judicial phase of the criminal process thereby triggering absolute immunity. 424 U.S. at 413, 430. Courts have further found that prosecutors are absolutely immune from claims based on their appearance at a probable cause hearing and before a grand jury, and based on their preparation of witnesses for trial. Spurlock, 330 F.3d at 797-98.

8

However, certain acts—for example, non-testimonial, pre-trial acts—are not protected. For example, the Sixth Circuit has explained:

> [P]rosecutors are not entitled to absolute immunity for 'investigative' or 'administrative' acts. Thus, prosecutors are not entitled to absolute immunity for the act of giving legal advice to police. Prosecutors have only qualified immunity for authorizing warrantless wiretaps in the interest of national security. A prosecutor is not entitled to absolute immunity for statements made in an affidavit supporting application for arrest warrant. Similarly, out-of-court statements made by a prosecutor at a press conference are administrative acts not entitled to absolute immunity.

Id. at 798 (internal citations and quotations omitted). In distinguishing between those functions which are protected by absolute immunity and those which are not, the Court must look to "how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." Id. (internal quotation marks and citation omitted).

### 1. Defendants Raymond and Wood

In this case, it is unquestionable that Plaintiff's claims against Defendants Raymond and Wood are barred by absolute prosecutorial immunity. Plaintiff alleges that Raymond and Wood failed to act prudently or to otherwise avoid gross negligence in the course of their prosecution of his case. His allegations stem exclusively from Raymond and Wood's appearances as assistant prosecuting attorneys on behalf of the Wayne County Prosecutor's Office at Plaintiff's plea hearing and sentencing. As this Court recently noted, plea bargaining and comparable activities are intimately associated with the judicial process and are thus protected by absolute immunity. Cheolas v. City of

Harper Woods, No. 06-11885, 2009 WL 388548, at *6 (E.D. Mich. Feb. 19, 2009) (citing Pfeiffer v. Hartford Fire Insurance Co., 929 F.2d 1484, 1492 (10th Cir. 1991); Pinaud v. County of Suffolk, 52 F.3d 1139, 1149 (2d Cir. 1995); Davis v. Grusemeyer, 996 F.2d 617, 629-30 (3d Cir. 1993), *abrogated on other grounds by* Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir. 1998); Taylor v. Kavanagh, 640 F.2d 450, 453-54 (2d Cir. 1981)). The Sixth Circuit has confirmed this conclusion, holding that "[c]onduct associated with plea bargains has long been held by this court to be so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity." Cady v. Arenac County, 574 F.3d 334, 341 (6th Cir. 2009) (internal citations and quotations omitted).

Plaintiff has not alleged any conduct or acts beyond those acts associated with the preparation of charging documents, plea bargaining and appearance at sentencing. He has not claimed that any part of Raymond and Wood's conduct was either investigative or administrative in function, thereby taking it out of the scope of absolute prosecutorial immunity. He states only that the assistant prosecuting attorneys were unjustified in pursuing charges on the amended statute. Because the actions of Defendants Raymond and Wood as alleged in Count I fall squarely within their purview as "advocates" and "officers of the court," the Court concludes that Count I against the assistant prosecuting attorneys must be dismissed.

2. **Defendant Worthy**

Next, Plaintiff's claims against Wayne County Prosecutor Kym Worthy are also barred by absolute immunity. Plaintiff alleges that Worthy's conduct was a direct and proximate cause of Plaintiff's improper plea agreement. Although Plaintiff names Worthy in Count I of the Complaint, he does not allege any facts indicating the nature of her specific involvement in the prosecution of his case. The general allegations incorporated into Count I do not mention Worthy. In Count II, Plaintiff claims that Worthy, as part of the Wayne County Prosecutor's Office, failed to screen, supervise, discipline and counsel the assistant prosecuting attorneys—in essence, actions connected to her administrative function as Raymond and Wood's supervising prosecutor.

As discussed above, absolute prosecutorial immunity does not apply in a § 1983 action when a prosecutor is not acting as an officer of the court. The Supreme Court further refined this principle in a recent opinion, finding that supervising prosecutors enjoy absolute immunity in a suit directly attacking their actions related to an individual case, even if their role is functionally administrative. Van de Kamp v. Goldstein, — U.S. —, 129 S. Ct. 855 (2009). In Van de Kamp, the plaintiff, a prisoner whose murder conviction was overturned in a *habeas corpus* proceeding, alleged that the district attorney and his chief deputy failed to institute a system of information sharing among deputy district attorneys regarding jailhouse informants. Id. at 859. The plaintiff claimed that this failure to adequately train or supervise information-sharing on the subject of informants resulted in a due process violation at his criminal trial. Id. The complaint was

not leveled against the individual prosecutors who had charged the plaintiff in his criminal proceeding. Rather, the plaintiff sought § 1983 damages from the district attorney for administrative or supervisory failings. The Court held that in this context, despite the line generally drawn between prosecutorial and administrative functions, "prosecutors involved in such supervision or training . . . enjoy absolute immunity from the kind of legal claims at issue here. Those claims focus upon a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of a trial." Id. at 861-62.

Just as in Van de Kamp, the claims alleged against Worthy in this case, if taken as true, relate solely to her role supervising the assistant prosecutors who prepared Plaintiff's case for trial and engaged in plea negotiations with Plaintiff. The allegations stem solely from her role supervising the prosecution of this individual case. Worthy's alleged actions in Plaintiff's prosecution were at least partly administrative, but nevertheless of a type directly connected with the conduct of a trial. As such, her actions were intimately associated with her role as an advocate of the state and they fall within the sweep of absolute prosecutorial immunity. Finally, the Court notes that the chilling effect of possible § 1983 liability in the context of the assistant prosecuting attorneys' liability, described above, is equally potent for supervising prosecutors. As the Supreme Court in Van de Kamp explained,

> [I]n terms of Imbler's functional concerns, a suit charging that a supervisor made a mistake directly related to a particular trial, on the one hand, and a suit charging that a supervisor trained and supervised inadequately, on the other, would seem very much alike. . . . As we have said, the type of

> "faulty training" claim at issue here rests in necessary part upon a consequent error by an individual prosecutor in the midst of trial, namely, the plaintiff's trial. If, as Imbler says, the threat of damages liability for such an error could lead a trial prosecutor to take account of that risk when making trial-related decisions, so, too, could the threat of more widespread liability throughout the office (ultimately traceable to that trial error) lead both that prosecutor and other office prosecutors as well to take account of such a risk. Indeed, members of a large prosecutorial office, when making prosecutorial decisions, could have in mind the "consequences in terms of" damages liability whether they are making general decisions about supervising or training or whether they are making individual trial-related decisions.

Id. at 863. In light of these concerns, the Court concludes that Defendant Worthy is also protected by absolute prosecutorial immunity and all claims against her must therefore be dismissed.

### B. Plaintiff Has Failed to State a Claim of a Constitutional Violation.

Because Plaintiff does not allege intentional wrongdoing, his claims of constitutional violations are not plausible on the face of the Complaint. A claim under section 1983 must allege that the deprivation of his rights was intentional; "No constitutional violation has occurred if the injury results from negligence." Lewellen v. Metropolitan Gov't. of Nashville & Davidson Co. Tenn., 34 F.3d 345, 348 n.3 (6th Cir. 1994). Even "[g]ross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.'" Id. at 351 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 130, 112 S. Ct. 1061 (1992)). See also Wolf v. Winlock, 34 Fed. Appx. 457, 462 (6th Cir. 2002) (affirming district court's determination that a police officer's mistaken arrest and detention of an individual did not rise to the level of a

Fourth Amendment violation where there was no allegation of evil intent). In his Complaint, Plaintiff does not set forth facts indicating that Raymond, Wood or Worthy's conduct was intentional in the constitutional sense. Conclusory allegations are insufficient to state a civil rights claim. See, e.g., Leon v. Federal Reserve Bank of Chicago, 823 F.2d 928, 930 (6th Cir. 1987). Thus, the Court finds that no cognizable claims of constitutional violations have been pleaded in the Complaint.[3]

**C.    Because Individual Defendants' Conduct Did Not Violate Plaintiff's Constitutional Rights, Plaintiff's Claim of Municipal Liability Also Fails.**

Having concluded that Plaintiff has not established a violation of his constitutional rights, Plaintiff's municipal liability claim also must be dismissed. See Ewolski v. City of Brunswick, 287 F.3d 492, 516 (6th Cir. 2002). It is well-settled that where there is no unconstitutional action committed by municipal employees, no municipal liability remains against the municipality. City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("[N]either Monell [ v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)] . . . nor any

---

[3]  The Court observes the incongruity in Plaintiff's complaint. Defendants made him a lenient offer to plead in this case, thinking that they were offering him an opportunity to avoid a lengthy sentence because of his habitual offender status. There is no dispute that Plaintiff had a troubled history with substance abuse and the law, nor is there a dispute that Plaintiff drove a car on a major interstate highway with a blood alcohol level well above the legal limit, ultimately crashing and seriously injuring his wife. Nevertheless, the prosecutors entered into plea negotiations with Plaintiff. With the advice of his attorney, Plaintiff chose to reap the benefits of that plea negotiation. He is now using the plea to attack the prosecutors. He claims that he suffered a constitutional violation from spending twelve months in prison, in essence, because the prosecutors helped him avoid what they mistakenly believed was a potential life sentence.

other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.") Because no such constitutional violation has been alleged, summary judgment must also be granted in favor of Wayne County on Plaintiff's Section 1983 claims.

### IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Dkt. # 5] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint be DISMISSED in its entirety, with prejudice.

SO ORDERED.

s/Gerald E. Rosen
Chief Judge, U.S. District Court

Dated: April 29, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 29, 2010, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137